UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| MICHELLE E. BUTTS, individually and as Special Administratrix of the Estate of DAVID PAUL BUTTS, Deceased, and as Guardian of minor heirs LISA M. BUTTS, RENEE E. BUTTS, DENNIS W. BUTTS, and STEPHANIE R. BUTTS; CHRISTOPHER M. BUTTS; STEPHEN P. BUTTS; JAMES E. BUTTS; and ERIC D. BUTTS,<br><br>  Plaintiffs,<br><br>v.<br><br>UNIVERSAL HEALTH SERVICES, INC., a Delaware Corporation; UHS OF DELAWARE, INC., a Delaware Corporation, Management Subsidiary of UNIVERSAL HEALTH SERVICES, INC.; VALLEY HEALTH SYSTEM, LLC, a Limited Liability Company, d/b/a SPRING VALLEY HOSPITAL MEDICAL CENTER, a wholly owned subsidiary of UNIVERSAL HEALTH SERVICES, INC.; GILBERTO RUIZ, M.D.; and JANIE KWAK-TRAN, M.D.,<br><br>  Defendants. | 2:05-CV-01434-PMP-LRL<br><br>O R D E R |

Presently before the Court is Defendant Gilberto Ruiz, M.D.'s Motion to Dismiss (Doc. #26) filed on May 31, 2006.  Plaintiffs Filed a Points and Authorities in Opposition to Defendant Ruiz' Motion to Dismiss (Doc. #27) on June 9, 2006.  Defendant Gilberto Ruiz, M.D., filed a Reply to Plaintiff's [sic] Opposition to Defendant Gilberto Ruiz, M.D.'s Motion to Dismiss (Doc. #28) on June 23, 2006.

## I. BACKGROUND

Plaintiffs are the surviving spouse and children of David Paul Butts ("Mr. Butts") and are all residents of a state other than Nevada or Delaware. (Compl. ¶ 1.) Defendants Universal Health Systems, Inc., Universal Health Systems of Delaware, Inc., and Valley Health System, LLC are all Delaware corporations or companies doing business in Nevada as Defendant Spring Valley Hospital Medical Center. (Id. ¶ 1-2.) Defendants Gilberto Ruiz, M.D., ("Dr. Ruiz") and Janie Kwak-Tran, M.D., are residents of Nevada. (Id. ¶ 1.) Plaintiffs allege that on December 5, 2003, Mr. Butts died as a result of Defendants' negligence while in Defendants' care for a kidney stone. (Compl.)

On December 4, 2003, Dr. Ruiz examined Mr. Butts in the emergency room at Spring Valley Hospital Medical Center. (Id. ¶ 9.) Dr. Ruiz discovered that Mr. Butts suffered from a two millimeter kidney stone. (Id.) Dr. Robert F. Buscho ("Dr. Buscho")[1] alleges in sworn affidavit that Dr. Ruiz gave Mr. Butts two doses of Demerol and a dose of Phenergan, and upon ordering Mr. Butt's admission to the hospital Dr. Ruiz ordered Mr. Butts receive four milligrams of Dilaudid intravenously every six hours. (Compl., Buscho Aff. ¶ 4a.) Dr. Buscho also notes that, as result of Dr. Ruiz's order, Mr. Butts received at least two milligrams of Dilaudid intravenously. (Id.) At 1:00 a.m., on December 5, 2003, Dr. Janie Kwak-Tran, as attending physician ordered additional Dilaudid administered to Mr. Butts. (Compl. ¶ 11.) When the nurses checked on Mr. Butts at 4:49 a.m., he was not breathing, pulseless, and asystolic in cardiac arrest. (Id. ¶ 12.) Mr. Butts was pronounced dead at 5:40 p.m. on December 5, 2003, after having been on a ventilator and other supportive measures. (Id.)

On December 2, 2005, Plaintiffs filed suit in this Court alleging Defendants failed to

---

[1] As required by Nevada Revised Statute 41A.071 in cases of medical malpractice, Plaintiffs attached to the Complaint the Affidavit of Dr. Buscho, an expert in emergency medicine.

exercise the degree of skill, care and expertise in their treatment of Mr. Butts normally exercised by comparable professionals; Defendants were negligent, careless, and reckless in the performance of their duties to Mr. Butts; and Defendants intentionally and recklessly failed to treat properly Mr. Butts. (Compl. ¶¶ 14-16.) Plaintiffs seek damages for their grief and sorrow, loss of support and consortium, damages for the pain, suffering and disfigurement to Mr. Butts, and special damages to the Estate of Mr. Butts for medical expenses and burial. (Id. ¶¶ 17-18.)

Defendant Dr. Ruiz requests the Court dismiss the Complaint as to Dr. Ruiz because Dr. Buscho's Affidavit does not meet the procedural requirements of Nevada Revised Statute 41A.071. Specifically, Dr. Ruiz argues Dr. Buscho's affidavit confirms that Dr. Ruiz did not breach the standard of care and therefore Dr. Buscho's affidavit does not support the Complaint's allegations. Plaintiffs counter that although Dr. Buscho's Affidavit is "not as detailed or complete as it could have been[,]" under the threshold requirements for initial pleadings, the Affidavit "clearly expressed opinions incriminating Dr. Ruiz." (Pls.' P. & A. in Opp'n to Def. Ruiz' Mot. to Dismiss at 4, 5.)

**II. DISCUSSION**

In considering a motion to dismiss, "all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party." Wyler Summit P'ship v. Turner Broad. Sys., Inc., 135 F.3d 658, 661 (9th Cir. 1998) (citation omitted). However, the Court does not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations in Plaintiffs' Complaint. See Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir. 1994). The issue is not whether Plaintiffs ultimately will prevail, but whether they may offer evidence in support of their claims. Gilligan v. Jamco Dev. Corp., 108 F.3d 246, 249 (9th Cir. 1997) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). Consequently, the Court may not grant a motion to dismiss for failure to state a claim "unless it appears beyond doubt that the

3

Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Hicks v. Small, 69 F.3d 967, 969 (9th Cir. 1995).

"As a federal court exercising supplemental jurisdiction over state law claims, [this Court is] bound to apply the law of the forum state." Bird v. Lewis & Clark Coll., 303 F.3d 1015, 1023 (9th Cir. 2002) (citing Bass v. First Pac. Networks, 219 F.3d 1052, 1055 n.2 (9th Cir. 2000)).  The Nevada State Supreme Court's decisions bind this Court when interpreting Nevada state law.  N.L.R.B. v. Calkins, 187 F.3d 1080, 1089 (9th Cir. 1999) (citation omitted).  Nevada Revised Statute 41A.071 provides the following:

> If an action for medical malpractice or dental malpractice is filed in the district court, the district court shall dismiss the action, without prejudice, if the action is filed without an affidavit, supporting the allegations contained in the action, submitted by a medical expert who practices or has practiced in an area that is substantially similar to the type of practice engaged in at the time of the alleged malpractice.

In Borger v. Eighth Judicial District Court, the Nevada Supreme Court held "because [Nevada Revised Statute] 41A.071 governs the threshold requirements for initial pleading in medical malpractice cases, not the ultimate trial of such matters, [the Court] must liberally construe this procedural rule of pleading in a manner that is consistent with [Nevada Rule of Civil Procedure] 12 jurisprudence." Borger v. Eighth Judicial Dist. Ct., 102 P.3d 600, 605 (Nev. 2004).  Under this jurisprudence a court deciding a motion to dismiss under Nevada Rule of Civil Procedure 12, "'must construe the pleadings liberally and draw every fair intendment in favor of the plaintiff.'" Borger, 102 P.2d at 605 n.28 (quoting Capital Mortgage Lending v. Hahn, 705 P.2d 126, 126 (Nev. 1985)).

Dr. Ruiz specifically challenges Dr. Buscho's statements regarding Dr. Ruiz's administration of Dilaudid, arguing that Dr. Buscho stated Dr. Ruiz administered only two milligrams of the drug and stated two milligrams of Dilaudid is within the standard of care. Dr. Ruiz therefore argues the Affidavit does not support the Complaint's allegations that

4

Dr. Ruiz failed to meet the standard of care. Plaintiffs respond that Dr. Buscho's Affidavit implicates Dr. Ruiz because it states Dr. Ruiz ordered four milligrams of Dilaudid intravenously, it implies that Dr. Ruiz administered excess opiate medication by prescribing Dilaudid in conjunction with Phenergan and Demerol, and it indicates Dr. Ruiz did not perform the standard of care regarding hydration treatment.[2]

Construing Dr. Buscho's Affidavit liberally and drawing every fair intendment in favor of Plaintiffs, Dr. Buscho's Affidavit meets the requirements of Nevada Revised Statute 41A.071 and supports the allegations contained in the Complaint regarding Dr. Ruiz. The Complaint alleges Dr. Ruiz failed to exercise the standard of care of comparable physicians in his treatment of Mr. Butts. (Compl. ¶¶ 14-16.) Dr. Buscho's Affidavit alleges facts indicating Dr. Ruiz failed to meet the standard of care. The Affidavit states Dr. Ruiz intravenously administered at least two milligrams of Dilaudid and two other opiates to Mr. Butts. (Compl., Dr. Buscho Aff. ¶ 4a.) Dr. Buscho also notes in his affidavit that "Dilaudid is usually given intramuscularly or subcutaneously. In fact, some recommend that it not be given intravenously because of its potency." (Id. ¶ 5a.) Additionally, Dr. Buscho describes the usual dose of intravenously administered Dilaudid as .5 to two milligrams but notes that Dr. Ruiz ordered that Mr. Butts receive four milligrams over six hours. (Id. ¶¶ 4a, 5a.)

Dr. Buscho also describes Dr. Ruiz's alleged failure to meet the standard of care, as the cause, in part, of Mr. Butts's cardiac arrest. Regarding Mr. Butts's prognosis, Dr.

---

[2] Plaintiffs also argue that Mr. Butts's medical records show Dr. Ruiz may have administered four milligrams of Dilaudid and did not hydrate Mr. Butts. Dr. Ruiz replies that Plaintiff cannot rely on the medical records to supplement Dr. Buscho's Affidavit because on a motion to dismiss, the Court may consider only the Complaint and the Affidavit. In ruling on a Rule 12(b)(6) motion, a district court may not consider any material beyond the pleadings. Fort Vancouver Plywood Co. v. United States, 747 F.2d 547, 552 (9th Cir. 1984). The Court may consider material properly attached to the pleadings. Amfac Mtg. Corp. v. Arizona Mall of Tempe, 583 F.2d 426, 429-30 (9th Cir. 1978). Accordingly, the Court will not consider information contained in Mr. Butts's medical records for purposes of ruling on the present motion to dismiss.

5

Buscho states Mr. Butts would have had a ninety percent chance of passing his kidney stone with "standard of care hydration and appropriate analgesic." (Id. ¶ 5c.) He also alleges that the doses of opiates Dr. Ruiz ordered, in combination with the additional Dilaudid Dr. Janie Kwak-Tran ordered, led to Mr. Butts's respiratory failure. (Id. ¶ 5a.) Dr. Buscho opines that "had the various parties met the standard of care . . . Mr. Butts would have passed his very classic 2 mm stone and certainly would not have suffered the respiratory arrest and subsequent cardiac arrest." (Id. ¶ 6.) Accordingly, Dr. Buscho sets forth in his Affidavit support for the allegations in Plaintiffs' Complaint that Dr. Ruiz's treatment of Mr. Butts fell below the standard of care. Therefore, the Court will deny Dr. Ruiz's motion to dismiss.

### III. CONCLUSION

IT IS THEREFORE ORDERED that Defendant Gilberto Ruiz, M.D.'s Motion to Dismiss (Doc. #26) is hereby DENIED.

DATED:  July 6, 2006

_____
PHILIP M. PRO
Chief United States District Court Judge